

# In the Court of Criminal Appeals of Texas

Nos. WR-63,081-03, WR-63,081-04

EX PARTE ROBERT LESLIE ROBERSON,

*Applicant*

On Suggestion for the Court to Reconsider Previous Rulings on its Own Motion

YEARY, J., filed a concurring opinion.

In order to be entitled to relief under Article 11.073, a habeas applicant must show that, if relevant, newly available scientific evidence had been presented at trial, "on the preponderance of the evidence" he would not have been convicted. TEX. CODE CRIM. PROC. art. 11.073(b)(2). Considering the new evidence Applicant presented in his -03 and -04 writ applications, as well as the evidence presented at his trial, Applicant's new evidence does not meet that burden.

This is not just a "shaken baby" case. Applicant has suggested the possibility that the two-year-old child victim had been ill and simply fell out of the bed. But evidence in this case showed that the tiny victim suffered *multiple traumas*.

Applicant told hospital personnel (and law enforcement) that he woke up around 5:00 a.m. to find the victim—who had been sleeping in bed with him—lying on the floor near the foot of the bed with blood on her mouth. Emergency room nurses and doctors—in both Palestine and Dallas—did not believe that the victim's injuries were consistent with the type of fall Applicant described to them. It is true that the victim had been treated in the emergency room three days earlier for a "viral syndrome[,]" but an emergency room doctor testified that her injuries "didn't fit the picture of a virus that went bad quickly." The victim was found to have a bruise on the back of her shoulder, a scraped elbow, a bruise over her right eyebrow, *bruises* on her chin, a bruise on her left cheek, an abrasion next to her left eye, multiple *bruises* on the back of her head, a torn frenulum in her mouth, bruising on the inner surface of the lower lip, subscapular and subgaleal hemorrhaging between her skin and her skull, subarachnoid bleeding, subdural hematoma, both pre-retinal and retinal hemorrhages, and brain edema.

It is true that the State invoked a "shaken baby" theory. But it also invoked a beating theory. And the evidence was consistent with both theories.

But even if we set to one side—for the moment—the evidence of shaking, the evidence also showed *multiple impacts to the victim's head*. At trial, Dr. Jill Urban testified that she was confident, given the

separate areas of dense hemorrhage in different areas of the head, that there were "multiple blows to different points on the head." She concluded that the victim died as a result of "blunt force head injuries."

Applicant now suggests there is new scientific evidence calling into question what some people call "shaken baby syndrome." Applicant also suggests that a short fall could have caused the victim's injuries. But the new evidence challenging "shaken baby syndrome" is not sufficient to overcome the evidence of trauma to multiple places on the victim's body. His theory also would force this Court to simply ignore the testimony presented at Applicant's trial from a defense expert to the effect that *Applicant admitted that he "lost it" and shook the victim* because he could not stop her from crying.

For these reasons, and other reasons as well, the Court is right to deny both (1) the suggestion to reconsider Applicant's previous subsequent writ applications and (2) the request to stay his execution.

I join the Court's ruling.

**FILED:**                                                      October 10, 2024
**DO NOT PUBLISH**